Good morning. We have four appeals to hear this morning, a busy week. Counsel, we're familiar with your cases. We've read your briefs. The authorities cited in your briefs at least portions of the record, so we know what the case is about. You don't have to tell us the facts. You've got limited time, and you should feel free to get straight to the heart of your argument and make points that you want to leave us with this morning. We're probably going to have some questions, and you should pay attention to our traffic lights. When the red light shines, it's time to stop. If you're finishing an answer from the court, you can finish that answer, but be mindful of our time. You won't lose any rebuttal time if you're just finishing the answer. So our first case this morning is the United States v. Touray. Ms. Strickland? Good morning. May it please the court. Sidney Strickland, and I represent Alhaji Touray. The district court abused its discretion in this case by using an anonymous jury, and a new trial is required. This court has held that the use of an anonymous jury is a drastic measure that should only be employed in limited and carefully delineated circumstances when there's a strong need to believe that the jury needs protection. Here, the district court's reasoning was that the court usually picks an anonymous jury when the allegations of the indictment or that there's any sort of organized criminal activity where the jurors might think that if the allegations are true, there might be other unindicted or other co-conspirators who might be in a position to contact them if their identities were known, and also any case involving weapons charges where jurors might think there might be some threat to their personal safety. The trial court's reasoning here shows an abuse of discretion for several reasons. First, the court focused on what the jury might think based on the charges, as opposed to whether the jury actually needed protection. Here, there was nothing to show that the jury actually needed protection from Mr. Touray or any of his alleged co-conspirators or unindicted co-conspirators to warrant the infringement of his right to the presumption of innocence. How is that much different from, and you focused on might, you sort of emphasized that as you were talking, different from LaFond? In LaFond, Your Honor, I believe there was at least some evidence that the Ross factors were met. Well, I mean, here, certainly, the district court and the jury were going through the Ross factors, but let me just point you to a specific part of LaFond, which is why I asked for it. So this is in Penn site 1223. There, first, both Witt and LaFond, who were members of the conspiracy, were members of a racist gang. Second, the district court was concerned that the defendant might know people outside the court or a house based on their gang affiliations who would have the ability to harm the jurors. And third, they were facing potential life sentences. Those were the three factors that the court considered, and we said that that was sufficient, that three of the Ross factors were met. That seems to be the same sort of might that the district court found here based on organized activity of unknown participants who had access to firearms and who might have the potential to harm jurors. How is that much different? Your Honor, I think in LaFond, the might comes in with the might harm the jurors, right? So here we have the might at there might even be, you know, any sort of organized criminal activity where they might think the allegations are true. In LaFond, you have a And we know from the jury trial, but even before that in the indictment, it alleges a fairly widespread conspiracy over three years with known and unknown members. I mean, yes, it doesn't say he was in a gang, but it certainly sounds like a drug trafficking conspiracy of some sort, does it not? Your Honor, I believe that this court's case law indicates that it has to be something more than just a drug trafficking conspiracy to be organized criminal activity in the way that Ross and Ochoa Vasquez did in LaFond. But is it not in saying that based on the allegations in the indictment and the evidence I know, that might be the case here and that those same folks might have access to the jurors and threaten them and this defendant is facing a life sentence. Is that not pretty close to what we held to be not an abuse of discretion in LaFond? I don't believe so, Your Honor, because I do believe that there's that defined gang in LaFond that creates the risk of other people acting on the defendant's behalf. Here you only have just a run-of-the-mill drug trafficking conspiracy. It's a marijuana conspiracy. There's only allegations that they're shipping drugs back and forth and there's some guns in the home that he wasn't even found guilty of having. Excuse me. I mean, if you fast forward a little bit in the evidence here, and the district court had this case for a while, it had experience with it, this did seem to be sort of a friends and family operation here. In other words, this wasn't some sort of like loose conspiracy, loose sort of a couple people working together at various times. This seemed to be an operation with the defendant at the top with many of his friends and family members who were living in his own homes that he had on two separate coasts, right? Right. I do agree that this was friends and family members, but I don't think that changes the fact that there's nothing to indicate that any of them were violent or would do anything other than, you know, sometimes transport some money on his behalf or sell the marijuana in the Atlanta home. So I don't believe that the organization you have here qualifies, under this Court's precedent, as the kind of organized criminal activity that we're looking at. And then if it does, then it basically opens it up to every drug conspiracy case, every drug conspiracy case, every gun case, then you can use an anonymous jury. I need you to understand something about the record. So, Judge Long referred to a written order. I wasn't from, is there a written order about the Ross Factors? I thought that what happened was at pretrial, the district court announced that it was going to have an anonymous jury. The defense, your co-defendant, objected and said, I'm sure you've heard the objection and the district court said, you know, something like, I'm familiar with this, explained why it was there. And let me be clear, that's right. There wasn't a written order. It was oral findings made beforehand. That's my misspeaking. I apologize. Okay. And then the only other time, I think, the district court explained what it was going to do, trial counsel for Torrey joins in the objection and then at jury selection, the district court says, look, I've got to explain why I'm using an anonymous jury under 11th Circuit case law and then explains why for the reasons that you've already identified this morning. That's it. That's all. And there's, again, objection from the defendants. And that's it, right? Yes, Your Honor. I believe that's correct. So, there were objections and the district court clearly understood what the objection was and offered its explanation. Yes, Your Honor. And the court even said that he had heard the objection before and then applies the correct analysis. So, I think it's clear that... No, you mean to say the correct analysis. Yes, Your Honor. The responsible analysis that at least the district court understood what the objection was. Correct, Your Honor. That is what I mean. Thank you. Can I ask you a question about the... So, let's just assume that you're right, that this was an abuse of discretion. How do we assess the... And sort of the second part of that question is, you know, we've said that a district court is supposed to give some kind of instruction to the jury about why it's anonymous. So, what... That's all my questions on that, if you could respond. Sure, Your Honor. If I can take it in reverse order, the case law does say that there is... The court can minimize the prejudice to the defendant by giving some kind of plausible explanation for using an anonymous jury.  Yes, yes. And, you know, and I believe LaFawn, the reason was, you know, the court just said, this is our standard practice, don't worry about it. That did not happen here. I know you say that didn't happen here, and I apologize for jumping in, but there does appear to be an instruction that's given with a mention of the anonymous jury before the trial starts. So, not at the beginning of voir dire, but after voir dire and before the substantive trial starts. This is at Docket Entry 406 at pages 159, 160. Do you know what I'm talking about? I'm not sure exactly, just based on... Yes. Ladies and gentlemen, as you know, during the course of jury selection, you were referred to only by your jury number, and we will continue doing that during the remainder of your service on this jury. Sometimes criminal trials attack the attention of the media and the public. The level of interest in any particular case is unpredictable and not within my control. This case involves two defendants and may continue, as I said earlier, for the rest of the week. It may attract attention, it may not, I just don't know, but there may be curiosity about participants, the lawyers, witnesses, defendants, judge, and perhaps even jurors. People may ask questions to learn more about the case. Even though these questions may be well-intentioned, they may still distract you from your duties as a juror. These questions can be awkward or inconvenient for you, your family, and your friends. They can be part of an unwanted and improper approaches toward you from outside the courtroom. During your service as a juror, you must not discuss the case with anyone, even after the case is finished. You will never be required to explain your verdict or your jury service. Your names and personal information will be known only to the court personnel and will not be discussed. Is that the kind of instruction that in Lafon and in Ochoa we said was and in Ross we said was sufficient? Your Honor, I think it's a little different from those instructions in that it's not Yes. Yes, Your Honor. Well, Your Honor, I think it's not directly saying that this is the reason, but also I'd note, Your Honor, that if you go into page 164 when the court is instructing the jury, he specifically says, I don't think there's going to be media coverage. So to the extent that he's saying, then, oh, it's because there's media coverage, he then comes back and contradicts that and says, well, I don't think there's actually going to be media coverage. In other words, as the Ross factor, he said, I don't think there's going to be media coverage. But in front of the jury, to give them an explanation, he kind of says, hey, this is one reason why we might do this. Doesn't that give a non-prejudicial way of divorce? Your Honor, I have to disagree. I think he says that about the Ross factors. But then he also says it to the jury on page 164 when he is instructing them about what they are to do when they go home that night. I see that my time has run out. I did not Well, no, you haven't finished your answer to Judge Brasher. Yes. But I want to make sure I understand what you just said, though, before you turn to that, which is that he says later to the jury he doesn't think there's going to be media coverage. But that's not necessarily inconsistent, is it, with what Judge Luck just read to you where he said, I don't know, it may or may not. It does sound like that might be a neutral reason that he offered to them for why they were being treated anonymously. Your Honor, I just have to disagree. I think it does contradict what the court is saying when he's saying maybe there's going to be media coverage and this is why we're doing this. And although he doesn't say this is why we're doing this, but then he comes back and says, well, I actually don't think there's going to be any media coverage. Then the jury's mind, if you're a juror there, you're not thinking this is to protect me from media coverage. It's for something else. And the judge, everyone else knows something that I don't and that I need to be protected. But to move on to Judge Brasher's question, if I may, and I can try to be as brief as possible, as argued in the brief, I believe this is a structural error. The Fifth Circuit essentially found so in the Sanchez case where the Ross factors called something different in the Fifth Circuit, but basically where you're so far from being justified for having an anonymous jury that the error becomes structural and it's not subject to a harmless error analysis. And that's because, one, it affects the framework of the trial as opposed to a specific error within the trial. And because, as Judge Brasher alluded to, it's impossible to assess the prejudice here. So this is like other cases where the Supreme Court has found that the error is structural, both because you can't quantify the harm, as in counsel cases, choice of counsel, you don't know what's going to happen differently. I'd also point the Court to a few different older cases from the Supreme Court, like Estes v. Texas, Radovi, Louisiana. We understand what structural error is.  What if it's not? What if we don't think that this is the kind of error that we should treat as structural error? And I reject the government's argument that we should apply a plain error review. Then we're reviewing for harmless error, right? I believe then the government, since this touches on his constitutional rights, has to prove that it's harmless beyond a reasonable doubt under Chapman. And are the two things that we would look at then, would we look at whether this affected voir dire and maybe the extent to which there was some coverage instruction to tell us we were doing it? Is that the two things we would look at? I believe those would be appropriate in the analysis, Your Honor, yes. Okay, thank you. Thank you. Good morning. May it please the Court. My name is Jamil Akeem Favors, and I represent the United States. I would first like to start off with something that Judge Brasher asked about, the prejudicial effect. We do not believe that there is a prejudicial effect here because the questions that were asked and only the names were left out. When we look at older cases such as Ross, Sanchez, and Ochoa Vasquez, in those cases, not only were the names, spouse's names, employers, and addresses left out, and that makes sense because… Judge Brasher's question wasn't about what was prejudicial here or not. His question was, is this even subject to a prejudice analysis? Is this the kind of error that we can't tell whether it's prejudicial or not because of the nature of the error, i.e., is it structural error or not? Your opposing counsel in brief says that this is structural. Why is this not structural? This is not structural error because it doesn't affect the essential framework in which the trial proceeds. When we look at other things such as structural error, denial of counsel, denial of other things, we see that there's not a particular rule that it applies to. Here, there's a statute that allows for the use of anonymous jury, 28 U.S.C. 1863b7, and we can also look at the level of discretions that the circuit court gives to the use of anonymous juries, and that's abuse of discretion. So it wouldn't logically follow that the circuit courts are going to give an abuse of discretion standard to the use of anonymous jury that if somehow the district court gets it wrong, it's an automatic reversal. Well, I don't know if it applied abuse of discretion, but I do have a question for you about that. It seems like in at least three of our cases, Ochoa, LaFond, and Bowman, in each of those cases there was an objection made because an instruction was not given or at least not a sufficient instruction. And in each of those cases what we said was we applied plain error in that circumstance, and in each of those cases we said it was not plain error because either it was an error to begin with or there was no prejudice for various reasons, one of which was the evidence was overwhelming. Another was because other instructions sort of covered this issue, so it wasn't such a big deal if this particular instruction wasn't there. How does that case law in our discussion there inform us when we ask the question of whether this is structural or not? When we look at whether it was – let me apologize, Your Honor. We're asking about this preventative instruction and how that plays into structural error. Well, I mean, given that we reviewed the failure to give a preventative instruction for plain error, what does that tell us about whether these sorts of errors are structural or not? Well, I think it tells us that it's not structural error because in structural error the case law shows that there wouldn't be any type of discretion. And if we're having this discussion about whether we're going to look at the harm or not, then it's not structural error. Structural error seems like it's black and white. If it's an error, we completely reverse, whereas here where we're looking at the harm that lets us know that it's not black and white, then it's going to be on the opponent to show that there was some sort of harm. In other words, in these three separate occasions, we have evaluated whether there was a substantial – the substantial rights of the defendant were affected, it was a plain error context, and we've evaluated whether it could be subject to some sort of plain error analysis or not. And given that, that means that we can evaluate whether the error affected the trial or not, and it isn't one of those errors that we can't tell and thus has to be structural. Is that what you're saying? Yes, Your Honor, and I think it's also pertinent to say that there's never been any court that has found that the use of an anonymous jury is structural error. I know that Ms. Strickland cites the U.S. v. Sanchez, but I don't read that case to say that the use of an anonymous jury is structural error. I'd read that case for the proposition that based on the facts in that case, the court stated that this wasn't subject to harmless error review, and I think those are two very different analyses. What would that mean? If it's not subject to harmless error review, does that mean that it's structural? Yes, I agree, Your Honor. Okay. Well, then I don't understand you. I guess I was just— You're admitting that the case does stand for the proposition that, at least in the Fifth Circuit, they treat it as structural. Correct, Your Honor. I think I was just making the argument that in the case, the court doesn't admittedly state that this is structural error. They just state that in closer—this wasn't a case where harmless error review would apply. But there has been at least one circuit that has stated that harmless error review applies when using— when in the use of anonymous jury, and I apologize to the court. This case is not in our briefs, but I would like to point— You argued that plain error review applies. That's the only argument the government made, and that's just clearly wrong here, isn't it? I mean, there was an objection. The district court understood the objection because it offered its rationale not once but twice. Correct, Your Honor. And I didn't fully appreciate Ms. Strickland's structural error argument in her— Whether it's structural error or not, what I don't understand is why you are arguing that it's plain error. It is not plain error. There was an objection. The district court understood what the objection was, offered an explanation. That's all that preservation requires. Correct, Your Honor, and that's where we move into the abuse of discretion analysis, Your Honor. Well, I mean, that's to determine whether there's an error or not. Correct, Your Honor. And that doesn't tell us what the standard is for whether the error is reversible or not. It might be that if there was no objection, then we review for plain error. If there was an objection, ordinarily we review for harmless error, although your opposing counsel says, no, this is the kind of error that's structural. So let's say for a second, for the moment, you've convinced me that this does not fall in the structural error category, right? Correct, Your Honor. That would mean, would it not, that we would review for harmless error, isn't that right? Correct, Your Honor. And that would also mean, would it not, that it's your burden. Correct, Your Honor. Your burden says nothing about why the error is harmless. And there's two kinds of harmless error review, as I understand it. One is constitutional error, where your burden is to establish that the error is harmless beyond a reasonable doubt. And then there's statutory error, where you have a lesser burden. Which is it here? We believe it's harmless beyond a reasonable doubt. And while it's not explicitly stated in our briefs that it's harmless error, by arguing the third prong of plain error, stating that it was on the defendant to say that it was harmful, we have essentially argued that this is harmless error. And it's harmless error because there was an extensive voir dire. And also, we can see throughout the verdict that the jury provided. In the verdict, the jury was able to presume Mr. Turay innocent on all counts at the beginning of trial. All that I have is if this record supports it, a finding that the error is harmless, it's really kind of hard to imagine when the error is not going to support it. I mean, won't the district court have a voir dire to ensure the impartiality of the jury in every case? There's nothing special about that. And we have almost nothing in this record, it seems to me, that would support a finding that this jury needed special protection from this defendant. At most, you have two of the Ross factors. He faced a lengthy sentence, and there was some evidence of potential intimidation. But that's it. There's several Ross factors. All the cases where we've said that Ross had been satisfied, it was at least three or more of the Ross factors very specific, very specific as to this particular defendant and the potential harm to the jury. It just seems to me that if we let this one go, that there's never going to be a violation. Correct, Your Honor. I believe, as you stated, there are two factors. But I believe there's a third one as well, the thought of an organized crime. And while this isn't the type of organized crime. It can't be that every case involving organized crime, that that's what the factor is about. It's organized crime with the potential or reason to believe that they would be violent toward jurors, isn't it? Correct, Your Honor. But when looking at this, when the court was looking at the indictment, what you see is you see a bicoastal drug operation that involved money, drugs, and guns. And so while it's not the same type of organized crime that we see in Ross and Ocho Vazquez, where there were mobs and gangs, this is a sophisticated group of individuals who have the possibility to do harm. And what if it was an organized crime? I mean, what if it was an organized ring that stole people's identities? Could it be exactly the same thing? It could be the same thing, Your Honor. But then that's what... I guess that goes to, I mean, Chief Judge Pryor's point, which is it seems like if we affirm this, then we're just saying that district courts can use anonymous juries in like 80 to 90 percent of criminal trials in the federal court system. I don't believe that that would be the case, Your Honor, because then I believe there would be an analysis on the level of threat posed in the particular case and the level of anonymity. In Ross and Ocho Vazquez, the level of anonymity there were the names were redacted, the spouses' names were redacted, work and addresses were redacted. Here, there was only a name. There was only the name redacted. So the attorneys were able to have a very coherent voir dire. This is not meant to be a trick question at all. Where do we look in the record to find out what was redacted? Your Honor, in Document 406, that's when the jury selection starts. For instance, for juror number one, we are not told his name, but we're told where he works, what county he works out of, that he's married, he has a wife, and that he has a 23-year-old son that's at a school here in the state of Georgia. That's not the type of information that the attorneys were able to get in Ocho Vazquez and in Ross because the threat in those particular cases were much higher. And while I agree with the Court here that the threat isn't as high, there aren't mobs, there isn't a lifetime sentence, but for that same reason, the level of anonymity wasn't the same. So the level of threat matched the remedy. Once again, this is just a record question just to make sure I'm understanding this right. The process that the District Court went through here is that the only information that the defendant had about these jurors was learned at the time of Wadeer where the jurors stood up and said, I'm juror number one, you know, I'm a whatever, a pharmacist, I live in this county, and I've been married for 20 years. That's the information? Correct, Your Honor. It's my understanding that the District Court had a sheet where the jurors filled out this information and then they stood up and answered the question. And the question spoke about the county they lived in, where they worked, and family history. These aren't the types of information that the attorneys were able to receive in other cases such as Ocho Vazquez and Ross. Your Honor, I have not seen where our residents distinguish between the level of anonymity that you're talking about. Just knowing that you're married and that you have a son of a certain age and that you live in a certain county, I don't know where our case law has said, oh, well, you don't have to have as much of a threat as long as you've allowed them to have more information about the person without still knowing who the person is. The case law doesn't explicitly state this balancing test, but I think it's inherently in the case law. When we think about Ocho Vazquez, it says that the two purposes that we want to conclude is that there's a strong reason for jury protection and two, to minimize prejudicial effects such that you have a very clear voir dire. So if you have less anonymity, then you're going to have a better voir dire. If you have less anonymity, then that's going to minimize the prejudicial effect. It's just not clear to me that there's really any basis in this record for saying that the jury needed special protection. Now, in terms of the second point, the voir dire, the point of the voir dire, as I understood it, is to ensure that you're getting an impartial jury, a jury that's going to really focus on, is going to presume the defendant innocent and is going to focus on what the evidence is and that it's the government's burden of proving the case beyond a reasonable doubt. And one of the things you can do, because the jury is anonymous, is give them a neutral reason for why they're being kept anonymous so that they don't fear the defendant or have some special concern that if they don't return a guilty verdict, that if they do return a guilty verdict, that they might be subject to harm. Can I ask about that last point? Because in your brief at page 35, you say, quote, there's no record of the district court giving the jurors an instruction. And so I can understand why no one focused on an instruction, but, you know, some of us read the entire voir dire and saw that the district court did, in fact, give that instruction here. Why was that not pointed out, and do you not think that that is a sufficient neutral basis for which the district court gave the jurors for why they were selected anonymously? I do believe that it's a sufficient neutral basis, but as the court stated, that wasn't stated until after the jury was selected. I believe that in other cases, when this neutral reasoning is given, it's— But, I mean, the point is, was the jury told why this was all done, whether before or afterwards? I just don't understand why you wouldn't have pointed that out. And, again, Your Honor, it's because it was stated after the voir dire, and in the other cases, I believe that that type of information is given before the voir dire to stop the prejudicial effect. And I see that I've gone over my time, so I will conclude. I ask that the court affirm the district court's rulings. Thank you. Last question for you, Rick. Yes. The anonymous jury, right? The government didn't request it. The government did not request it, Your Honor. Thank you, Your Honor. Just to touch on something you discussed with the government, and that's voir dire in this case, and the guarantee of an unbiased jury that that is supposed to protect. In this case, the specific voir dire done in this case does not alleviate concerns. It was not thorough, and the court specifically said it was not going to be. The court gave each side approximately 30 minutes and said, you're going to be brief, there's not going to be any extensive interrogation of the jury. That's on page 7. And then he says no interrogation of the juror, just one or two brief follow-up questions. So the information they were able to get was minimal in this case. And, in fact, voir dire was a very short portion of the transcript. And that's a problem. One, it doesn't alleviate the harm here. But it also touches on why I'm arguing that this is structural error, because part of what knowing the juror's name does is guarantee to the public that we have an impartial set of fact finders here. So having the jury's name available allows the public to look and see whether it is drawn from a select portion of the domain, and LaFond, and Ochoa, where we also view for plain error at least the jury instruction piece of this, the minimization piece of this, where we've said, A, other instructions of the jury, some of which the same ones were given here, were sufficient to mitigate any harm. So in Ochoa, I mean, talk about harm. That trial, that case is notorious. So it was significant there in terms of what the jury could have thought about this particular defendant. And, B, the nature of the evidence we cited in both Ochoa and Bowman. And here, we seem to have both of those things. Your Honor, I think, I mean, the key difference is that in Ochoa and all of the other court's cases, they found that the Ross factors were met. And here, none of the Ross factors are met. And I think this Court should agree with the Fifth Circuit and Sanchez in this situation where the use of an anonymous jury is totally unjustified and it impairs the defendant's presumption of innocence, then reversals should be automatic. Because it's just impossible to quantify the harm here. In other words, what we said in Ross is there are two pieces of this. One is we have to assure that there is a basis for this. And, second, we want to be able to minimize. You're right that most of those cases met the first prong but didn't meet the second one. Here, it appears we met the second one but not necessarily the first one. And I guess my only question is it seems like evaluating error would be the same for both of those things. It's hard to tell. But we looked at the nature of the instructions given, and we looked at the overwhelming nature of the evidence to see, absent something else in the record, whether there was prejudice. And it seems like both of those things are present here. So how can we say, assuming non-structural error, that there was not some sort of harmlessness, whether at the Chapman level or the statutory level or plain error, which I agree doesn't really apply here. Your Honor, I just have to disagree on whether the instruction was sufficient to do anything to mitigate the harm here where the court comes back and says, the reason I gave you is not actually a reason, as I talked about before. But the case law says that the instruction can help mitigate the harm. It doesn't say it can eliminate the harm. And I think especially with all the other things you have going on in this case, the harm is in no way mitigated. Let me make sure I understand that case law. In these other cases, the Ross factors, in fact, were satisfied. That is different. Yes. There was an extensive void error, I think, in those cases. We can agree or disagree about whether this was extensive enough. And in some of the cases, there was a special instruction to the jury after the Ross factors were satisfied. And in other cases, the defendant didn't ask for it. Right? So that would have been something the defendant could have thought, but did not, where the Ross factors have already been satisfied. Yes. In my understanding, our cases, I think there are four cases that we have, LaFawn, Ross, Ochoa, and Bowman. Yeah, and Bowman. That's it. All of those are cases where the Ross factors, first of all, were actually satisfied. Yes, Your Honor. I completely agree. And at least two of those, there was, in addition to the extensive void error, a special instruction. And in the other two, the defendant didn't ask for it. Yes, Your Honor. I agree with Your Honor's summary of the case law there. Can I ask you a question to address something that the government said? The government said, basically, this really wasn't much of an anonymous jury after all. What do you say about that? Because I looked, I will say, I think he's right about Ochoa. There, I think, basically zero information was given. I'm not so sure whether that's what's happened in the other cases. But, I mean, how much information has to be given about jurors, do you think, for it not to be an anonymous jury, right? Like, what if it was just, well, we'll give you the names of the jurors but nothing else about them, or we'll give you everything about the juror but just no name. I guess my, what do you say about that? Your Honor, I think not having the name is what makes it an anonymous jury. I also disagree with some of what opposing counsel said about what was available in voir dire. There were no names. The spouses' names were not told either. So, it was just very. I think it was a question. Yes, yes. I believe that's right, Your Honor. So, basically, so your position is that you have to satisfy the factors and you have to give some kind of statement, and there has to be extensive voir dire as long as the name of the juror is not given to the defendant? Does it all just have to be, like, stated publicly to the world? What does, what has to be done to the name of the juror? Your Honor, I think, yes, the name of the juror has to be public information for the reasons that I alluded to earlier. The public's interest in a public, sorry, an open and public trial to be able to ensure that our judiciary is working fairly. So, I do think any time that the juror's names are not available, and then also the name is what the attorneys need to be able to conduct voir dire sufficiently to be able to look into who these people are. Thank you, Your Honor. Mr. Render, you were court appointed. We very much appreciate you taking the appointment and discharging your duty very well this morning. Thank you. Thank you, Your Honor. We move to the second case, Dukes v. Gregory.